# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 1526 | **DATE** | 11/14/2000 |
| **CASE TITLE** | USA ex rel. Michael Harris vs. Kenneth R. Briley | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Respondent's motion to dismiss [12-1] is granted. Petitioner's petition for writ of habeas corpus [1-1] is denied. Judgment is entered in favor of respondent and against petitioner. This case is dismissed with prejudice.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | NOV 15 2000 date docketed | 17 |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | FD-7 FE FOR DOCKETING | | |
| RO | courtroom deputy's initials | 00 NOV 14 PM 4:15 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. MICHAEL HARRIS, ) ) ) | |
| Petitioner, ) | No. 00 C 1526 |
| v. ) ) | Judge Ruben Castillo |
| KENNETH R. BRILEY, ) ) | |
| Respondent. ) | |

## MEMORANDUM OPINION AND ORDER

Before this Court is Respondent Kenneth R. Briley's[1] motion to dismiss Petitioner Michael Harris' petition for habeas corpus pursuant to the statute of limitations found in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244(d)(1). For the following reasons, Respondent's motion to dismiss is granted.

## RELEVANT FACTS

Following a jury trial in case 87 CR 15374 ("the 15374 case") in the Circuit Court of Cook County, Harris was found guilty of attempted murder, aggravated battery, and armed robbery. He was sentenced to concurrent terms of 58 years' imprisonment for these offenses and is currently in the custody of Respondent Briley, the warden of Stateville Correctional Center, in Joliet, Illinois. Following his conviction, Harris appealed to the Appellate Court of Illinois, raising the following issues:

(1) Whether the trial court erred by admitting evidence concerning

---

[1] Kenneth R. Briley is now the warden at Stateville Correctional Center, and the Court has substituted him, in James H. Page's place, as the proper defendant.

> a prior conviction for armed robbery;
>
> (2) Whether the trial judge's interference in the manner in which defense counsel conducted his motion to suppress denied defendant a fair and impartial trial;
>
> (3) Whether the trial judge erred by denying defense counsel's motion to suppress the identification of George Caver;
>
> (4) Whether defendant was proven guilty of attempted murder, aggravated battery and armed robbery beyond a reasonable doubt; and
>
> (5) Whether the 58-year sentence imposed by the trial judge is excessive and must be vacated.

*People v. Harris*, 580 N.E.2d 1342, 1344 (Ill. App. Ct. 1991). The appellate court affirmed Harris' conviction and sentences on October 11, 1991. *Id.* Harris then filed a petition for leave to appeal to the Illinois Supreme Court, which was denied on February 5, 1992.

Following the denial, Harris filed a petition for post-conviction relief in the Circuit Court of Cook County, which was dismissed on August 18, 1994. In September 1994, Harris appealed the dismissal of his post-conviction petition. On May 10, 1995, James Reddy, Harris' attorney, filed a motion to withdraw as his counsel, asserting that there were no appealable issues in the case. On September 15, 1995, the appellate court allowed Harris' attorney to withdraw and affirmed the circuit court's dismissal of the post-conviction petition. Harris asserts that he filed a *pro se* petition to the Illinois Supreme Court on May 31, 1995, more than three months *prior* to the appellate court decision, because he mistakenly believed that his attorney's motion to withdraw as counsel, itself, signified that the appellate court had affirmed the lower court's decision and he could proceed with his appeal to the supreme court. Harris contends that the petition he sent to the supreme court was a copy of the same documents he submitted to the

2

circuit court seeking post-conviction relief. (R. 14, Harris' Resp. at 3.) The supreme court, however, never received this petition.

At about this same time, Harris was proceeding with post-conviction relief in another case, circuit court case number 87 CR 15375 ("the 15375 case"). (*Id.*) Harris filed a motion for leave to file a late petition for leave to appeal in the 15375 case. On June 8, 1995, the supreme court acknowledged that Harris' motion was filed. (R. 15, Harris Aff. Ex. 5, June 8, 1995 letter from Illinois Supreme Court to Harris.) On September 26, 1995, the supreme court again wrote to Harris, telling him that his motion for leave to file a late petition for leave to appeal was allowed and being treated as a petition for leave to appeal. (*Id.* at Ex. 6, September 26, 1995 letter from Illinois Supreme Court to Harris.) On April 19, 1999, the supreme court wrote to Harris, explaining that his petition for leave to appeal (in the 15375 case) had been denied on December 6, 1995 and the notice of denial had erroneously been sent to a different prisoner by the same name. None of these letters from the supreme court referenced the circuit court docket numbers with which Harris was familiar, instead referring to supreme court docket numbers. Harris asserts that the correspondence from the supreme court regarding the 15375 case, lacking the circuit court docket number, caused him to erroneously believe that the supreme court had received his petition in the 15374 case and, as such, he had complied with the filing requirements in the 15374 case. On March 10, 2000, long after the statute of limitations had run, Harris filed a *pro se* habeas corpus petition in the 15374 case in this Court.

## ANALYSIS

**I. Standard of Review**

The AEDPA, effective April 24, 1996, limits the period for habeas corpus actions to one year:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of --

    (A) the date on which the judgment became final by conclusion of direct review or the expiration of the time for seeking such review;

    (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

    (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d).

The one-year statute of limitations provision became effective on April 24, 1996, but the Seventh Circuit has provided a one-year grace period in applying § 2244(d)(1). *Lindh v. Murphy*, 96 F.3d 856, 865-66 (7th Cir. 1996), *rev'd on other grounds*, 521 U.S. 320 (1997). Accordingly, if the state prisoner's conviction became final prior to the enactment of the AEDPA, he had until April 23, 1997 to file a petition for writ of habeas corpus. In this case, the judgment in the 15374 case became final on October 6, 1995, i.e. 21 days after the appellate court affirmed the circuit court's dismissal of Harris' petition. *See* ILCS S. Ct. Rule 315(b). Under *Lindh*, Harris had until April 23, 1997 to file his habeas petition with this Court.

4

## II. Equitable Tolling

Harris acknowledges that 28 U.S.C. § 2244(d) contains a one-year statute of limitations period for habeas corpus actions under § 2254. He argues that the limitations period, however, can be equitably tolled "when circumstances beyond a prisoner's control make it impossible to file a petition on time." (R. 14, Harris' Resp. at 5.) Specifically, Harris asserts that his petition is appropriate for equitable tolling because he did file a petition for leave to appeal to the Illinois Supreme Court on May 31, 1995, but due to circumstances beyond his control, the court never received the petition.

In support of his contention that he filed a petition for post-conviction relief with the supreme court in the 15374 case, Harris directs the Court to the prison mail log, which notes merely that Harris sent a package to the Illinois Supreme Court on May 31, 1995. Harris argues that the *Houston* "mailbox rule" requires us to deem May 31, 1995 as the day on which his petition in the 15374 case was filed. *See Houston v. Lack*, 487 U.S. 266 (1988) (*pro se* prisoner's notice of appeal was filed at moment of delivery to prison authorities for forwarding to district court); *Simmons v. Ghent*, 970 F.2d 392, 393 (7th Cir. 1992) (a prisoner's filing "is deemed timely if lodged with the prison authorities . . . within the time permitted for appeal"). Cases in which the mailbox rule has been applied, however, did not leave open to question whether the correspondence was actually sent. In each of the cases cited by Harris, the filing was received, albeit late, by the intended recipient-court.[2] In contrast, in this case, the supreme court

---

[2] We recognize that the same concerns underlying the mailbox rule, e.g. incarcerated *pro se* litigants are unable to monitor the process of the mails and they must rely on correctional authorities who may be motivated to delay filing, may be present in a case where the prisoner attempts to file a pleading and the documents never reach their destination. However, "*Houston*

5

never received Harris' petition, and Harris provides only scant evidence that he sent his petition in the 15374 case to the supreme court on May 31, 1995. Specifically, Harris directs us to the May 31, 1995 prison log entry, which notes that Harris sent a package to the Illinois Supreme Court on that date.[3] He argues that this entry, alone, proves that his petition in the 15374 case was sent to the supreme court. We find, however, that there is a more obvious and reasonable explanation for the fact that the prison log contains this May 31, 1995 entry. Harris acknowledges that "at about the same time" as he was pursuing his petition for leave to appeal in the 15374 case, he sent a post-conviction petition in the 15375 case to the supreme court, which receipt was acknowledged by the supreme court on June 8, 1995. (R. 14, Harris' Resp. at 3.) The May 31 mail log entry appears only to indicate that Harris sent his petition in the 15375 case to the supreme court on that day. The entry does not provide evidence that a second petition was also included in that package.

Furthermore, Harris argues that we should consider his late-filed habeas petition because two letters from the supreme court, the first one acknowledging receipt of his motion for leave to file a late petition for leave to appeal in the 15375 case and the second indicating that that motion

---

does not create an exception by which incarcerated litigants may avoid time restrictions." *Lewis v. Richmond City Police Dept.*, 947 F.2d 733, 736 (4th Cir. 1991). Instead the rule "merely serves to create functionally equivalent time bars and provide equal access to the courts for *pro se* prisoner litigants." *Id.* If we were to expand the *Houston* rule to encompass pleadings which were never even received by the intended court, we would be providing *pro se* prisoner litigants not only equal, but heightened access to the courts. Such a rule would allow those litigants to file pleadings at their will, regardless of statutes of limitations, so long as the prisoner has, at some point within the limitations period, sent any correspondence (regardless of content) that was documented in the prison mail log to the appropriate court. The case law does not support such an expansion of *Houston*.

[3] The contents of the package are not described in the prison mail log.

6

was allowed, led him to believe that the court had received his petition in the 15374 case. This was an easy mistake to make, he asserts, because he only knew the cases by their circuit court numbers (87 CR 15374 and 87 CR 15375), and the correspondence from the supreme court referenced only the supreme court docket numbers. Harris asks us to ignore the fact that both letters from the supreme court refer explicitly to a motion for leave to file a late petition for leave to appeal, a motion which was not included in the materials which Harris claims to have sent to the court in the 15374 case but was included with his petition in the 15375 case. Thus, Harris should have been aware that the correspondence from the supreme court was in response to a motion pertaining specifically to the 15375 case.[4]

In any case, even if we were to assume that Harris filed a petition in the 15374 case on May 31, 1995 and reasonably believed that the supreme court correspondence confirmed receipt of that petition, he cannot adequately explain why, when he did not hear from the supreme court for three years and seven months, i.e. between September 26, 1995 and April 19, 1999, he did not try to contact the supreme court to inquire about the status of his petition in the 15374 case. In an attempt to demonstrate his diligence, Harris claims that he wrote numerous letters to the supreme court inquiring about the status of his petition but received no response from the court. (R. 14, Harris' Resp. at 4.) The prison logbook, however, shows that after September 26, 1995,

---

[4] As we noted earlier, the date Harris alleges he filed his petition for post-conviction relief with the supreme court, May 31, 1995, was more than three months *before* the appellate court completed its review of the post-conviction petition. Harris provides an explanation for this strange chronology by asserting that "[a]fter receiving [his attorney's] Motion to Withdraw, [he] believed that [his] post-conviction appeal in the Illinois Appellate Court had been denied." (R. 15, Harris Aff. at ¶ 6.) Although not convinced by this explanation, we will not base our conclusion on this peculiarity in the timing of the filing.

7

he did not write to the supreme court until April 28, 1999. Harris explains that the prison mail log is accurate as to what is recorded on it, but is an incomplete record of outgoing or incoming mail, suggesting that some of his correspondence to the supreme court was not properly recorded. He does not, however, present any evidence of any additional correspondence sent to the supreme court during the three years and seven months between getting what he believed was confirmation of receipt of his petition in the 15374 case and receiving his delayed notice that his petition had been denied. We find that equitable tolling would not be appropriate in this case. "[E]quitable tolling is granted sparingly . . . [e]xtraordinary circumstances far beyond the litigant's control must have prevented timely filing." *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000) (citations omitted). In this case, Harris does not present any compelling evidence that he attempted to file a petition in the 15374 case or that, in spite of his reasonable diligence, late filing of his habeas petition on March 10, 2000 could not be avoided and thus should be excused. We therefore dismiss the petition as untimely.[5]

---

[5] We note that our review of the substantive merits of Harris' habeas petition makes clear that he would not have met the standards under AEDPA. We did not, however, consider the possible outcome on the merits in our decision to dismiss Harris' petition.

## CONCLUSION

For the foregoing reasons, we grant Respondent's Motion to Dismiss, (R. 12-1), and deny Harris' petition for a writ of habeas corpus, (R. 1-1). The Clerk of the Court is instructed to enter final judgment, pursuant to Federal Rule of Civil Procedure 58, against Harris. The Court thanks appointed counsel for their efforts on behalf of Mr. Harris.

ENTERED:

*Ruben Castillo* (signature)

**Judge Ruben Castillo**
**United States District Court**

**Dated: November 14, 2000**